## AMERICAN RAILWAY EXPRESS CO. v. GALT.

[90 South. 597, No. 22163.]

1. CARRIERS. *Notation on receipt for C. O. D. shipment as to amount to be collected not declaration of value limiting liability.*

Where an interstate common carrier of express accepted an interstate shipment of the value of one hundred and fifty-five dollars, issuing therefor its receipt containing certain recitals, stipulations, and blank spaces, which form of receipt and contents had been authorized by the Interstate Commerce Commission, assuming to act under the authority of Interstate Commerce Act Feb. 4, 1887, as amended by the Carmack Amendment (U. S. Comp. St., sections 8604a, 8604aa), and first and second Cummins Amendments (U. S. Comp., St., sections 8592, 8604a), which form of receipt had been published by the express company and was on file in its offices, as well as with the Interstate Commerce Commission, in which receipt there is a provision giving the shipper a lower rate in consideration of a declared value in writing by the shipper, and there is a blank space in such receipt for such declared or released value, which space was left blank, and in the blank space therein for the name of the consignee there was inserted, "Collect C. O. D. fifty-six dollars and twenty-two cents," and the trunk and contents were lost in transit, and the shipper sued the express company for their full value, and the latter defends on the ground that the limit of its liability is fifty-six dollars and twenty-two cents, the amount set out in said receipt in the manner above stated, because said amount represented the declared or released value by the shipper, *held,* the receipt upon its face refutes the contention of the express company, the said "C. O. D. fifty-six dollars and twenty-two cents" not appearing on the line intended for such declaration of value, but on the line intended for the name of consignee, and because of the further fact,

128 Miss.—6

as shown by the evidence, the said "C. O. D." entry was made without any regard to value, but alone as a means of collecting an indebtedness.

2. CARRIERS. *Not released from liability for full value for loss of shipment where no value declared by shipper in writing.*

The Interstate Commerce Commission, assuming to act under Interstate Commerce Act. Feb. 4, 1887, as amended by the first and second Cummins Amendments (38 Stat. 1196, and 39 Stat. 441 [U. S. Comp. St., sections 8592, 8604a]), which provides, among other things, full compensation to an interstate shipper for loss of or damage to goods shipped, except as to certain character of goods (which includes the kind here involved), as to which the Commission is given power to authorize the carriers to maintain rates, depending upon the value of the property shipped, declared or agreed on in writing by the shipper, as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit recovery to an amount not exceeding the value so declared, and to establish rates varying with such declared value, authorized express companies to issue for all interstate shipments a uniform receipt, with a blank space therein for the insertion of such declared or released value, containing a stipulation that "if the shipper desires to release the value to fifty dollars for any shipment of one hundred pounds or less, or not exceeding fifty cents per pound actual weight, for any shipment in excess of one hundred pounds, the value may be released by inserting 'Not exceeding fifty dollars,' or 'not exceeding fifty cents per pound,' in which case the company's liability is limited to an amount not exceeding the value so declared or released," and also a stipulation that "the company will not pay over fifty dollars in case of loss or fifty cents per pound actual weight for any shipment in excess of one hundred pounds, unless a greater value is declared and charges for such greater value paid," and in accordance with such authority such a receipt was adopted and used by such express companies. *Held,* that said former stipulation was a substantial compliance with said statute, and in so far as the latter stipulation conflicts therewith the same is unauthorized, the purpose of said statute as amended by the second Cummins Amendment being to afford the shipper full value for any loss suffered by him unless he chooses to take the initiative by declaring a released value in writing; that the shipper is given the active, conscious choosing whether he will pay the lower rate and recover less than full value, and if he so elects, he sets out in such receipt the released value, and on the other hand, if he is silent either from choice or ignorance, he pays the higher rate, which carries with it the right to recover full compensation for his loss.

Appeal from circuit court of Warren county.

Hon. E. L. Brien, Judge.

Action by W. H. Galt against the American Railway Express Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*R. L. McLaurin,* for appellant.

Appellant contends that under the Act of Congress of August 9, 1916, 39 Stat. L. 441, commonly known as the Second Cummins Amendment that the proviso in the First Cummins Amendment of date March 4, 1915, and which became effective on June 2, 1915, 38 Stat. L. 1196, relating to goods hidden from view by wrapping, boxing, etc., was eliminated and that the effect of this Second Cummins Amendment is to permit limitations of liability or the amount of recovery; and the establishment and maintenance, under the prescribed conditions, of rates, depend upon values declared in writing by the shipper or agreed upon in writing as the released value of the property in respect to all property except ordinary live stock, and that of course the shipment in question here does not come within the exception.

Attorney for the appellee, plaintiff in the court below, took serious issue with the defendant on this point, and in an elaborate brief thereon contended, and successfully before the circuit judge, that the Express Company had no right under the Acts of Congress to limit the amount a shipper could recover but that in the event of loss, the carrier would, under all circumstances, be liable for the full value of the package at the point of destination. He said: "The defendant is living in the past. He declines to enter into the present. The law for which he has contended, and still contends, has been repealed by Congress. The principal argument of counsel for plaintiff in the court below, and we dare say that it will be in this court, was based on a decision of the Federal Court. In the case of *McCaull-Dinsmore* v. *Chicago, Milwaukee & St. Paul*

*Railroad Company*, 251 Fed. 664, this case was appealed by the railroad company after the judgment of the district court was affirmed by the circuit court of appeals; see 260 Fed. 835, and subsequently was again appealed by the railroad company and the case was again affirmed by the supreme court of the United States. See 253 U. S. 97.

In this case it was held by the supreme court of the United States, quoting from the syllabus, 253 U. S. 97 as follows: "Under the Cummins Amendment of March 4, 1915, which provides that the carrier shall be liable for the full actual loss, damage or injury, notwithstanding any limitation of liability, limitation of amount of recovery, or representation or agreement as to value in the receipt, bill of lading, etc., and which declares any such limitation unlawful and void, as shipper, in case of loss, is entitled to damages on the basis of value at the place of destination at the time when the property should have been delivered if that is greater than the value at place and time of shipment, notwithstanding his uniform bill of lading provided for computing damages on the latter basis." P. 99, 260 Fed. 835, affirmed.

This being an interstate shipment, of course it is a federal question and the federal decisions thereon will control, but we are not without authority from our own state decisions as to the right of a common carrier to limit the amount of recovery by contract. See *Jones* v. *Southern Express Company*, 104 Miss. 126; *American Express Company* v. *Burke*, 104 Miss. 275; *Y. & M. V. Railroad Company* v. *Peeples*, 106 Miss. 604; *Southern Pacific Railway* v. *Lyon*, 107 Miss. 777; *Hill* v. *N. O. M. & C. Railroad*, 117 Miss. 548, and particularly the language of the court on page 563, and *Y. & M. V. Railroad Company* v. *Craig*, 118 Miss. 299.

The Interstate Commerce Commission has ruled on this question. In the matter of Express Rates, Practices, Accounts and Revenue, 43 I. C. C. 510, decided April 2, 1917, the Interstate Commerce Commission among other things held: "Rates authorized for the transportation by express

of property, except ordinary live stock, depend upon the value declared in writing by the shipper or agreed upon in writing as the released value." See also Perishable Freight Classification, 56 I. C. C., pages 449 and 482, decided February 4, 1920.

Turning now to the case in the matter of Bills of Lading, 52 I. C. C., page 671, et seq., we find a clear statement according to our conception of it of the effect of the Carmack Amendment and the First and Second Cummins Amendments. Prior to the adoption of this amendment the liability of common carriers was determined by the common law or the statutes of the different states.

The effect of the Carmack Amendment was to hold the initial carrier receiving property for transportation from a point in one state to a point in another state as having contracted for through carriage to the point of destination, using the lines of its connection carriers as its agents.

The amendment took away from such initial carriers its former right to make a contract limiting its liability to loss or damage occurring on its own line, and thus relieving the shipping public of the burden theretofore imposed upon it of proving the particular carrier upon whose line the loss or damage occurred. *Atlantic Coast Line* v. *Riverside Mills,* 219 U. S. 186. The carrier was prohibited from mitigating or escaping the duties and liabilities imposed upon it by the amendment by any contract, receipt, rule, or regulation which it might make, or attempt to make, with the shipper.

Prior to the decision in the *Croninger case, supra,* there had been much conflict in the decisions, both of the federal and state courts, upon the question of validity of conditions in bills of lading which limited or sought to limit the amount of the carrier's liability for loss, damage, and injury to goods transported. The proviso in the amendment had been construed by both federal and state courts to preserve to the shipper the remedies then existing under state laws when the latter were more advantageous to him than the remedy provided by federal law,

and so the rules were interpreted differently according to the jurisdiction in which the case arose. The Croninger case held that it was the purpose of Congress to assume jurisdiction in the fixing of the carrier's liability upon interstate shipments, and thereafter such questions were generally construed in the light of the decision in that case, in which it was held that a contract for transportation containing a stipulation of value to which the carrier's liability was sought to be limited was valid and not in violation of the provision of the act.

On March 4, 1915, Congress enacted the First Cummins Amendment, so called, which became effective June 2, 1915, 38 Stat. L. 1196. It extended the territorial application of the provisions of the Carmack Amendment to the transportation of goods within the territories of the United States, the District of Columbia, or to goods exported to adjacent foreign countries, and also fixed, definitely and rigidly, the liability of the common carrier by a provision making the carrier liable for the full actual loss, damage, or injury caused by it or any of its connections to the goods transported by it, notwithstanding any limitations of liability or limitation of the amount of recovery or representation or agreement as to the value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is hereby declared to be unlawful and void. That amendment provided, however, for a *bona-fide* declaration of value, which was binding upon both parties under the following conditions:

"Provided, however, that if the goods are hidden from view by wrapping, boxing, or other means and the carrier is not notified as to the character of the goods, the carrier may require the shipper to specifically state in writing the value of the goods, and the carrier shall not be liable beyond the amount so specifically stated, in which case the Interstate Commerce Commission may establish and main-

tain rates for transportation, dependent upon the value of the property shipped as specifically stated in writing by the shipper. Such rates shall be published as are other rate schedules; provided, further, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law."

Notwithstanding the evident purpose of that amendment to invalidate all limitations or attempted limitations of liability of carriers for loss, damage, or injury caused by them, there was much diversity of opinion as to its effect upon rates and upon bill of lading provisions which were at the time in force and effect as published in tariffs, on file with the Commission. In response to numerous and urgent requests the Commission conducted an inquiry into some phases of the subject and in its report. The Cummins Amendment, 33 I. C. C. 682, expressed its views, tentatively, upon some of the matters and things presented. It found that there was necessity for revision of bills of lading, live stock contracts, and other similar contracts of carriage, as well as of the classifications and rate schedules; that bills of lading and live-stock contracts ought to be at once amended by eliminating obviously unlawful and invalid provisions and permission was given to make such changes effective upon less than statutory notice. The expression of the Commission's views upon these matters was made with the express reservation that the questions were subject to judicial interpretation and that its views might be somewhat changed in the light of later developments and more complete information.

By the Second Cummins Amendment, 39 Stat. L. 441, effective August 9, 1916, the proviso of the first amendment relating to goods hidden from view by wrapping, boxings, etc., was eliminated and the following language substituted in place thereof: "That the provisions thereof respecting liability for full actual loss, damage, or injury notwithstanding any limitation of liability or recover or representation or agreements or release as to value, and

declaring any such limitation to be unlawful and void, shall not apply to property, except ordinary live stock, received for transportation concerning which the carrier shall have been or shall hereafter be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released, and shall not, so far as relates to values, be held to be a violation of section 10 of this Act to regulate commerce as amended; and any tariff schedule which may be filed with the Commission pursuant to such order shall contain specific reference thereto and may establish rates varying with the value so declared or agreed upon; and the Commission is hereby empowered to make such order in cases where rates dependent upon and varying with declared or agreed values would in its opinion, be just and reasonable under ·the circumstances and conditions surrounding the transportation. The terms 'ordinary live stock shall include all cattle, swine, sheep, goats, horses, and mules, except such as are chiefly valuable for breeding, racing, show purposes, or other special uses."

The effect of the latter amendment is to permit limitations of liability, or the amount of recovery, and the establishment and maintenance, under the prescribed condition, of rates dependent upon values declared in writing by the shipper or agreed upon in writing as the released value of the property, in respect of all property except ordinary live stock, which, as explained in the amendment, is still subject to the rigorous inhibitions against limitations of the carrier's liability contained in the First Cummins Amendment.

These conditions, as they affect live stock, will be discussed later in a supplemental report dealing with the live stock contract or bill of lading.

With respect to all property other than ordinary live stock, unless the carrier shall have been or shall be expressly authorized or required by the Commission to establish and maintain rates dependent upon a written declaration or agreement as to value, the provisions of the First Cummins Amendment are still applicable. That rates dependent upon value may be permitted and that the parties may be free to make declarations or agreements in respect of the value of goods, it is provided that such declarations or agreements shall have no other effect than to limit liability and recovery to an amount not exceeding the value stated and shall not be deemed to be in violation of section 10 of the act.

From this statement we call the attention of the court particularly to the very last paragraph copied, that is that a carrier may be authorized by the commission to establish and maintain rates, on all property except ordinary live stock based on the value thereof and, that this agreement as to value may be dependent upon a written declaration or agreement as to value, that is a contract for a limited valuation can be authorized and evidenced either by a written declaration or an agreement. The Interstate Commerce Commission repeated this idea as to which in the same paragraph it again said: "That rates dependent upon value may be permitted and that the parties may be free to make declarations or agreements in respect of the value of goods, it is provided that such declarations or agreements shall have no other effect than to limit liability and recovery to an amount not exceeding the value stated and shall not be deemed to be in violation of section 10 of the act." This construction of the Federal Statute, the Second Cummins Amendment, is a construction approved by Robert's Federal Liability of Carriers, Vol. 1, page 567, section 325; Third Edition of Watkins on Shippers and Carriers, Vol. 2, page 1190, section 440.

### Second Proposition.

The shipper was bound by the terms of the contract or bill of lading whether he signed it or not, if he accepted

and retained it, and he is thereby limited to a recovery of fifty dollars or to fifty-six dollars and twenty-two cents, C. O. D. which has already been paid.

Under the chapter on Bills of Lading, 4 R. C. L., page 7, we find the following text supported by a long list of authorities: "Modern conditions have rendered it admissible, if not necessary, for carrier and shipper to enter into contracts which vary or limit the common-law rules, and where an instrument contains such terms, it becomes highly essential to establish the assent of a shipper. to the terms of a bill. It is not necessary for a shipper to sign a bill of lading to render it binding, for the rule of law adopted and uniformly adhered to by the. courts is that a clause in a bill of lading given to a shipper of goods, limiting and restricting a carrier's common-law liability incident to its general employment if understandingly assented to by the owner, will as effectually bind him as though he had signed it. *Erie R. Co.* v. *Wilcox,* 84 Ill. 239, 25 Am. Rep. 451; *Erie & W. Transp. Co.* v. *Dater,* 91 Ill. 195, 33 Am. Rep. 51; *Adams Co.* v. *Carnahan,* 29 Ind. App. 606, 63 N. W. 245, 64 N. E. 647, 94 A. S. R. 279; *Pacific Ex. Co.* v. *Foley,* 46 Kan. 457, 26 Pac. 665, 26 A. S. R. 107, 12 L. R. A. 799; *Judson* v. *Western R. Corp.,* 6 Allen (Mass.) 486, 83 Am. Dec. 646; *Grace* v. *Adams,* 100 Mass. 505, 97 Am. Dec. 117, 1 Am. Rep. 131; *Singer* v. *Merchants' Despatch Transp. Co.,* 191 Mass. 449, 77 N. E. 882, 114 A. S. R. 645; *Christenson* v. *American Exp. Co.,* 15 Minn. 270, 2 Am. Rep. 122; *McFadden* v. *Missouri Pac. R. Co.,* 92 Miss. 343, 4 S. W. 689, 1 A. S. R. 721; *Germania Fire Ins. Co.* v. *Memphis & C. R. Co.,* 72 N. Y. 90, 28 Am. Rep. 113; *Ullman* v. *Chicago & N. W. R. Co.,* 112 Wis. 150, 88 N. W. 41, 88 A. S. R. 949, 56 L. R. A. 246. See also in this connection 4 R. C. L., pages 8, 9 and 10. In paragraph 13, R. C. L., page 10, we find this statement: "But the acceptance of a bill of lading amounts only to an assent to those terms therein contained that are reasonable in the law."

This statement is supported by referring to the case of

*Davis* v. *Central Vermont R. Co.,* 66 Vt. 290, 29 Atl. 313, 44 A. S. R. 852; paragraph 249, page 792, 4 R. C. L.; *Great Northern Railway Company* v. *O'Connor,* 232 U. S. 508; *Adams Express Company* v. *Croninger,* 226 U. S. 491; *Wells Fargo & Company* v. *Neiman-Marcus Company,* 227 U. S. 470; *Hart* v. *Pennsylvania Railroad,* 112 U. S. 331, 338; *Boston & Maine Railroad* v. *Hooker,* 233 U. S. 111; *Texas & Pacific Railway* v. *Mugg,* 202 U. S. 242; *Chicago & Alton Ry.* v. *Kirby,* 225 U. S. 155; *Chicago, R. I. & P. Ry. Co.* v. *Cramer,* 232 U. S. 490; *Atch. T. & S F. Railway* v. *Robinson,* 233 U. S. 180; *Kansas City Southern Ry. Co.* v. *Carl,* 227 U. S. 639; *Missouri, Kansas & Texas Ry. Co.* v. *Harriman,* 227 U. S. 657; *Chicago, Rock Island & Pacific Ry. Co.* v. *Cramer,* 232 U. S. 490; *Great Northern Ry. Co.* v. *O'Connor,* 232 U. S. 508; *Pierce* v. *Wells Fargo & Company,* 236 U. S. 284; *Great Northern Ry.* v. *O'Connor,* 232 U. S. 508; *Boston & Maine R. R.* v. *Hooker,* 233 U. S. 97, 121; *Louisville & Nashville R. R.* v. *Maxwell,* 237 U. S. 98; *New York Central R. R.* v. *Beaham,* 242 U. S. 148; *Southern Express Company* v. *Byers,* 240 U. S. 612, 614; *Cincinnati, New Orleans & Texas Pacific Railway Co.* v. *Rankin,* 241 U. S. 319, 326; *Railroad Company* v. *Fraloff,* 100 U. S. 24, 27; *The Kensington,* 183 U. S. 263; *Phineas Fonseca* v. *Cunard Steamship Co.,* 153 Mass. 553; *American Express Company* v. *United States Horseshoe Company,* 244 U. S. 65. And from this it will be seen that the authority to expressly provide in rate schedules for a primary limitation of value to be fixed by the measure of the charge and liability unless another and a higher valuation be declared is specifically recognized where the shipment is dealing with merchandise as distinguished from a live stock contract, and it is with a merchandise contract with which we are here dealing and which the plaintiff claims is not binding on him.

*Bruini & Hirsch,* for appellees.

On the hearing in the lower court, appellant argued that the limitation in the express receipt was binding. In sup-

port thereof it offered the case of *J. E. Jones* v. *Southern Express Company,* 104 Miss. 126, and others along that line.

Unquestionably appellant was correct as to the state of the law at the time the Jones case was decided. Unfortunately we happened to represent Mr. Jones in that case, and we well recall that we presented an unbroken line of decisions of our supreme court, to the effect that the limitation in the express receipt to fifty dollars was void, as against public policy.

Between the time the Jones case was decided in the lower court, and the hearing in this honorable court, the opinion in the cast of *Adams Express Company* v. *E. H. Croninger,* 226 U. S. 491, came to hand, and the express company called the attention of this honorable court to that decision.

In *Adams Express Co.* y. *E. H. Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed., decided January 6, 1913, and in *Chicago, Burlington & Quincy Railroad Company* v. *H. Fred Miller,* 226 U. S. 513, 33 Sup. Ct. 155, 47 L. Ed., decided on the same day, the supreme court held that a shipper under a contract like the one here could recover no more than the agreed value written in the contract. The court construed what is commonly known as the "Carmack Amendment" (act June 29, 1906, Ch. 3591, Sec. 7, 34 Stat. 595; U. S. Comp. St. Supp. 1911, p. 1307) to the Interstate Commerce Act (Act Feb. 4, 1887, Ch. 104, Sec. 20, 24 Stat. 386, U. S. Comp. St. 1901, p. 3169) holding that "in interstate shipments the act was exclusive to all state statutes or policies, and that the decisions of that court were the supreme law in reference to contracts of similar import to this one."

The Carmack Amendment of June 29, 1906, to the Act of February 4, 1887, upheld the limitation in the contract aforesaid, so when the Cummings Amendment was passed, it was for the express purpose of changing the law; of putting an end to the fraud upon the public; that is, the pass-

ing out a receipt with the foregoing limitation therein, without the actual knowledge or consent of the shipper.

It was a well-known fact that the public only awoke to the terms of the receipt after it had sustained loss. It was, therefore, as we have said, to correct the law as it then stood, as construed by the case of *Adams Express Company* v. *Croninger, supra,* that the First Cummings Amendment was enacted.

In line with the *Adams Express Company* v. *Croninger case, supra,* there followed in quick succession the case of *Chicago, Burlington & Quincy R. R. Co.* v. *Fred Miller,* 226 U. S. 513. It is true that the Carmack Amendment was in itself twice amended, March 4, 1915, and August 9, 1916. Let us note the language employed, because it is exceedingly important, except ordinary live stock. To our minds the language employed is clear and unmistakable. Of course, if the shipper declares the value, or agrees upon it, he is bound by it, but if he does not, he is not bound by it.

Appellant correctly stated in its brief that we offered the case of *Chicago, Milwaukee & St. Paul Railway Company* v. *McCaull-Dinsmore Company,* 253 U. S. 97, 64 L. Ed. 801. This case started in the district court, and Judge MORRIS the district judge, first made a finding of fact, and then gave his conclusion of law. His opinion is to be found in 252 Fed. 664, 667; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *McCaull-Dinsmore Co.,* 260 Fed. 835. The Cummins Amendment, Act of March 4, 1915, ch. 176, 38 Stat. at L. 1196; Comp. Stat. 8604a; Fed. Stat. Anno. (2 Ed.), p. 506, provides that the carriers affected by the act shall issue a bill of lading and shall be liable to the lawful holder of it for any loss, damage or injury to such property . . . And no contract, receipt, rule, regulation, or other limitation of any character whatsoever, shall exempt such common carrier . . . from the liability herein imposed; and further, that the carrier shall be liable for the full actual loss, damage, or injury—notwithstanding any limitation of liability or limitation of the amount of recovery, or representation or agreement as to value in any

such receipt, or bill of lading or in any contract, rule, reg-
ulation or in any tariff filed with the Interstate Commerce
Commission; and any such limitation, without respect to
the manner or form in which it is sought to be made, is
hereby declared to be unlawful and void.   Before the pas-
sage of this amendment the Interstate Commerce Commis-
sion had upheld the clause in the bill of lading as in no
way limiting the carriers, liability to less than the value of
the goods, but merely offering the most convenient way of
finding the value.   *Shaffer* v. *Chicago R. O. & P. R. Co.*, 21
Inters. Com. Rep. 81w.   In a subsequent report upon the
amendment it is considered that the clause was still valid,
and not forbidden by the law.   33 Inter. Com. Rep. 682,
693.   The argument for the petitioner suggests that courts
are bound by the commission's determination that the
rule is a reasonable one.   But the question is of the mean-
ing of a statute, and upon that, of course, the courts must
decide for themselves.   *Chicago, Milwaukee & St. Paul Ry.
Co.* v. *McCaull-Dinsmore Co.*, 253 U. S. 97, 64 L. Ed. 801.

The point which we particularly desire to accentuate is
that the Interstate Commerce Commission had entertained
a different view from that expressed in the foregoing opin-
ion.   The construction, therefore, placed upon the statute
by the foregoing decision set at rest all other constructions
whether by the Interstate Commerce Commission, or any
text-writer.   *Siebert* v. *Erie R. Co.*, 179 N. Y. S. 136;
*Wabash Railway Company* v. *Holt, et al.*, 263 Fed. 72.
This honorable court will see that it was admitted that "the
carrier was liable under the Cummins Amendment for the
market value of the goods lost anything in the bill of lad-
ing to the contrary notwithstanding."

. The question raised in the foregoing case was simply as
to whether or not, under the facts in the case, the burden
of the Carmack Amendment should be placed upon the in-
itial carrier, or upon the delivering carrier, the loss or in-
jury having occurred on the delivering carrier.   But this
honorable court will see that that for which we are con-
tending was admitted.

If, in the instant case, the value of the shipment had been declared in writing by the shipper, or agreed upon in writing as the released value of the property, the shipper would have been bound by such value. Appellee is desirous of making this clear to the court, and also to appellant. It is appellee's contention that the value was not declared in writing by the shipper, nor was the released value of the property agreed upon in writing. There was absolutely no declaration in writing by the shipper of the value of the property, nor was there any released value of the property agreed upon in writing.

Appellant contends that the taking of the receipt by the shipper, with the provision in the printed part of a limited liability, is the released value of the property but this is wholly untenable. If this honorable court will read both of the Cummins Amendments of the Carmack Amendment, it will observe that the limitation of the liability in these uniform express receipts, or other contracts of transportation, have been legislated out of existence, and in order to bind the shipper to any value, other than the real value at the place of destination it is necessary that the shipper shall have declared in writing the value of the property, or shall have agreed in writing upon the released value of the property.

The provision in the note at the bottom of the receipt contemplates a positive act on the part of the shipper, in the event he wishes to avail himself of the company's lower charges. *Lindenburg* v. *American Railway Express Company* (W. Va.), 106 S. E. 884.

As in this instance, the carrier did not take from the shipper a written declaration of value nor a written agreement as to value, signed by him. It failed to place itself within the requirements of the statute and the regulations of the Interstate Commerce Commission prescribed thereunder. In other words, it did not comply with the conditions precedent to its right to carry the property under a limitation of liability. It should have given him a receipt specifying a value fixed by himself, and evidenced by his

signature. In doing so, it would have given him the option as to value contemplated by the law. In failing to do so, it denied him that option. Besides it neglected to avail itself of the right conditionally conferred upon it by the statute and the regulations, by its failure to take his written declaration or agreement as to value. A writing not signed by him, although specifying value, was not a declaration or agreement in writing by him.

Preparation and promulgation of regulations by the interstate commerce commission and the posting of tariffs by the carrier, conforming to such regulations, do not alone limit the liability in any particular case. Although they may be constructive notice to the shipper, the carrier's liability stands on the basis of full actual value, unless limited in the manner prescribed. Such limitation cannot be effected in any other way. *McCormick* v. *Southern Express Co.*, 81 W. Va. 87, 93 S. E. 1048. As the provision now under consideration was not in the Carmack Amendment, nor the First Cummins Amendment, the decisions interpreting and applying them relied upon in the argument submitted for the plaintiff in error, are not applicable. In *American Express Co.* v. *U. S. Horse Shoe Co.*, 244 U. S. 58, 37 Sup. Ct. 595, 61 L. Ed. 990, decided under the present law the shipper signed the written valuation. In *Boston & Maine R. Co.* v. *Piper*, 246 U. S. 439, 38 Sup. Ct. 354, 62 L. Ed. 820, Ann. Cas. 1915E. 569, the bill of lading contained an illegal limitation upon which the carrier relied in its defense. *Lindenburg* v. *American Railway Express Co.* (W. Va.), 106 S. E. 884.

The reasoning of the foregoing case is irresistible, and is decisive of the case at bar, and sustains in whole the holdings of the circuit court. The case of *Buschow Lumber Company* v. *Hines* (Mo.), 229 S. W. 451, is a case in which the facts are practically the same as in the case of *Chicago, etc., R. Co.* v. *McCaull-Dinsmore Co.*, 253 U. S. 97, and although the shipment was made on May 16, 1918, long after the Second Cummins Amendment to the Carmack Amendment was enacted, it followed the supreme court

of the United States in its holding in said case of *Chicago, etc., R. Co.* v. *McCaull-Dinsmore Co., supra.* To appellee's mind the appellant cannot escape paying the value of the property, either under the First Cummins Amendment or the Second Cummins Amendment.

This Honorable court will note, we repeat, that appellee does not contend that the Second Cummins Amendment is without effect. Appellee gives it full force and effect in his contentions, but giving it full force and effect, as we have shown, does not aid appellant. The latter has not correctly construed the Carmack Amendment as amended by the two Cummins Amendments.

In closing we wish to call the court's attention to the case of *Siebert* v. *Erie R. Co.*, 179 N. Y. S. 136, heretofore referred to in our brief on page 26. This case, it will be observed, is in line with the holding in the case of *Lindenburg* v. *American Railway Express Company, supra,* and *Buschow Lumber Company* v. *Hines.*

The court held in the Siebert case that a shipper not having signed release was not entitled to the reduced rate, so in the instant case the shipper would not be entitled to the reduced rate, as he had not declared the value of the property, or agreed in writing on a released value of the property.

In conclusion, we ask that the decision of the lower court be affirmed.

ANDERSON, J., delivered the opinion of the court.

The appellee, W. H. Galt, recovered a judgment against appellant, American Railway Express Company, in the circuit court of Warren county for the principal of the amount sued for, ninety-eight dollars and seventy-eight cents, with interest and statutory damages of ten per cent., aggregating one hundred fifteen dollars and seventeen cents from which appellant prosecutes this appeal.

The facts of the case were agreed to, and in substance are as follows: Appellant was, at the time the alleged cause of

128 Miss.—7

action arose (and is now), an interstate as well as intrastate common carrier of goods by express. Appellee had left his trunk and contents of the value of one hundred and fifty-five dollars with the National Park Hotel of Vicksburg, in this state, as security for a board bill of fifty-six dollars and twenty-two cents due the hotel by him. Later he instructed the hotel management to ship the trunk to him at Anson, Tex., by express, C. O. D. fifty-six dollars and twenty-two cents, the amount of said hotel bill, which was accordingly done; the shipment being made over the line of appellant through its office at Vicksburg. The trunk and contents were lost in transit, and never found. Appellant paid the National Park Hotel the C. O. D. amount, fifty-six dollars and twenty-two cents, with an agreement, however, between appellant and appellee, entered into at the time, that such payment should not prejudice any right the latter might have against the former to recover from it the balance of the value of the trunk and contents—that is, the difference between the agreed value, one hundred and fifty-five dollars, and the said amount so paid. This difference appellee sued for, and recovered the judgment appealed from. When the shipment was made by the National Park Hotel the latter took from the agent of appellant at Vicksburg a receipt denominated "Uniform Express Receipt," the face of which is in substantially the following form, and in the exact language here copied:

"Uniform Express Receipt.

"The company will not pay over fifty dollars, in case of loss, or fifty cents per pound, actual weight, for any shipment in excess of one hundred pounds, unless a greater value is declared and charges for such greater value paid.

"American Railway Express Co. (Incorporated).

"Nonnegotiable Receipt.

"Vicksburg, Miss. 11-8 1919.

"Received from Nat. Park Hotel subject to the classifications and tariffs in effect on the date hereof, one trunk to W. H. Galt, Anson, Texas, value herein declared by shipper to be ——— dollars. [See footnote.] Consigned

to Collect C. O. D. fifty-six dollars and twenty-two cents at——. Charges, War Tax. Which the company agrees to carry upon the terms and conditions printed on the back hereof, to which the shipper agrees, and as evidence thereof accepts and signs this receipt.

"[Signed] C. A. Logue, for the Company.

"——————, Shipper.

Note.—The company's charge, except upon ordinary live stock, is dependent upon the value of the property, as declared or released by the shipper. If the shipper desires to release the value to fifty dollars for any shipment of one hundred pounds or less, or not exceeding fifty cents per pound, actual weight, for any shipment in excess of one hundred pounds, the value may be released by inserting 'Not exceeding fifty dollars,' or 'Not exceeding fifty cents per pound,' in which case the company's liability is limited to an amount not exceeding the value so declared or released."

The entire face of the receipt is printed matter, except its date, the name "National Park Hotel" as shipper, the description of the property, the name of the consignee, the C. O. D. fifty-six dollars and twenty-two cents and the name of the agent of the company, which were written in blanks intended for the purpose. On the back of the receipt there is certain printed matter headed "Terms and Conditions," only paragraph 2 of which is pertinent, which follows:

"2. In consideration of the rate charged for carrying said property, which is dependent upon the value thereof and is based upon an agreed valuation of not exceeding fifty dollars for any shipment of one hundred pounds or less, and not exceeding fifty cents per pound, actual weight, for any shipment in excess of one hundred pounds, unless a greater value is declared at the time of shipment, the shipper agrees that the company shall not be liable in any event for more than fifty dollars for any shipment of one hundred pounds or less, or for more than fifty cents per pound, actual weight, for any shipment weighing more

than one hundred pounds, unless a greater value is stated herein. Unless a greater value is declared and stated herein the shipper agrees that the value of the shipment is as last above set out and that the liability of the company shall in no event exceed such value."

There was introduced in evidence by agreement of the parties the "official express classification No. 26," which was on file in the offices of appellant, including its office at Vicksburg, as well as with the Interstate Commerce Commission, and which had been authorized by the latter; on page 7 of which is set out the form and contents of the express receipt to be used by express companies in their interstate business, of which the form of the receipt here in question, as well as the printed matter thereon, is an exact copy. This official classification further sets out the tariffs of charges of express companies for interstate shipments, which show the authorized charges on the trunk and contents in question from Vicksburg to Anson, Tex., to be as follows: Based on a value of fifty dollars, two dollars and thirty-nine cents; on a value of fifty-six dollars and twenty-two cents, two dollars and forty-nine cents; and on a value of one hundred and fifty-five dollars, two dollars and fifty-nine cents. On this shipment the express charges were to be paid at the destination, and were based by the agent of appellant at the initial point on a value of fifty dollars. Appellant contends, first, that, under the terms of said express receipt constituting the contract of shipment between the parties, the extent of its liability is fifty dollars, and, if mistaken in this, then the limit of its liability is the said C. O. D. amount set out in the receipt, fifty-six dollars and twenty-two cents.

This being an interstate shipment, what is known as the Carmack Amendment to the Interstate Commerce Act of 1887, as amended by the first and second Cummins Amendments (U. S. Comp. St., sections 8604a, 8604aa), is controlling of the questions involved; in the consideration of which the radical change made in the act by the latter amendment should be borne in mind. The first Cummins

Amendment simply provided in substance that interstate carriers should be liable "for the full actual loss, damage or injury" to the property shipped, "notwithstanding any limitation of liability or limitation of the amount of recovery, or representation or agreement as to value" in the receipt or bill of lading, contract, rule, regulation, or tariff of such carriers filed with the Interstate Commerce Commission; and such limitation, without respect to the form in which it is sought to be made, was declared to be unlawful and void. Act March 4, 1915, 38 Stat. 1196 (U. S. Comp. St., section 8604a).

The second Cummins Amendment provides that the inhibition declared in the first Cummins Amendment against any limitation of liability by the carriers, by means of contract or otherwise, should not apply to baggage carried on passenger trains or boats, nor to live stock shipped, and provides further that, as to all other goods shipped, the Interstate Commerce Commission should have the power to authorize or require the carriers by its order— "to establish and maintain rates dependent upon *the value declared in writing by the shipper or agreed upon in writing as the released value of the property* [italics ours], in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released, and shall not, so far as relates to values, be held to be a violation of section 10 of this act to regulate commerce, as amended; and any tariff schedule which may be filed with the Commission pursuant to such order shall contain specific reference thereto and may establish rates varying with the value so declared or agreed upon; and the Commission is hereby empowered to make such order in cases where rates dependent upon and varying with declared or agreed values would, in its opinion, be just and reasonable under the circumstances and conditions surrounding the transportation." Act Aug. 9, 1916, 39 Stat. 441 (U. S. Compiled Statutes 1916, p. 9290).

The official express classification and tariffs introduced in evidence, above referred to, are to be treated, in considering this case, as having been authorized by the Interstate Commerce Commission.

We will consider first the contention of appellant that the C. O. D. amount of fifty-six dollars and twenty-two cents set out in the express receipt constituted the declared or released value of the shipment, and that therefore, under said statute, and the stipulations in said receipt, is the limit of the liability of appellant. As it appears to the court, a mere reading of the receipt refutes this contention. In the first place it does not appear on the line intended for the declaration of value by the shipper. That line is blank. It appears on the next line below, which was intended for the name of the consignee. Furthermore, it is a matter of common knowledge that in express shipments the amount set opposite the letters C. O. D. is not intended always to represent the value of the article shipped. In many instances it only represents the initial payment by the purchaser, the consignee, on the purchase price of the article shipped. It may represent the whole value or less than the whole value. To construe the receipt in question according to the contention of appellant would make it read entirely different from what it does, and evidently different from the manner appellant's agent, who wrote it, intended it should read.

We come now to appellant's other contention, that, in the absence of a declared or released value written in the face of the receipt in the blank space provided for that purpose, then under the stipulations in said receipt the limit of its liability is fifty dollars. In considering this question it becomes necessary to have in mind the pertinent provisions of the receipt. We will first look at the provisions of the receipt which seem to bear out the contention of appellant. The first paragraph following the caption on the face of the receipt is:

"The company will not pay over fifty dollars, in case of loss, or fifty cents per pound, actual weight, for any ship-

ment in excess of one hundred pounds, unless a greater value is declared and charges for such greater value paid."

And paragraph 2, on the back of the receipt, which is made part of the contract by stipulation on the face of the receipt, among other things provides:

"Unless a greater value is declared and stated herein, the shipper agrees that the value of the shipment is as last above set out (same as provision last quoted above), and the liability of the company shall in no event exceed such value."

On the contrary, the receipt has a blank space for the declaration of value by the shipper, preceded by the printed language, "Value herein declared by shipper," and below the blank for the amount is, in brackets, "See footnote," and the footnote referred to is the last paragraph on the face of the receipt, and is printed in much heavier type than the "Conditions" on the back of the receipt, and is in this language:

"Note.—The company's charge, except upon ordinary live stock, is dependent upon the value of the property, as declared or released by the shipper. If the shipper desires to release the value to fifty dollars for any shipment of one hundred pounds or less, or not exceeding fifty cents per pound, actual weight, for any shipment in excess of one hundred pounds, the value may be released by inserting 'not exceeding fifty dollars,' or 'not exceeding fifty cents per pound,' in which case the company's liability is limited to an amount not exceeding the value so declared or released."

It will be seen from this footnote that it is expressly and plainly therein provided that, if the shipper desires to take advantage of the lower rate going with a released value, it is to be done by— "inserting not exceeding fifty dollars, or not exceeding fifty cents per pound, *in which case the company's liability is limited to the amount not exceeding the value so declared or released."* (Italics ours.)

In other words, action on the part of the shipper is necessary to bring about a reduced rate and limited liability;

silence will not do it. So there seems to be a conflict in the provisions referred to; those first referred to tending to sustain the contention of appellant, while those last mentioned tend to sustain the position of appellee. It should be remarked here, rather by way of parenthesis, that we are unable to see how the classifications and tariffs containing said uniform receipts introduced in evidence could have been made in conformity to the second Cummins Amendment, which was enacted by Congress August 9, 1916, more than a year after such classifications and tariffs were filed with the Commerce Commission and became effective, which date was September 10, 1915, as shown in the record by the agreed facts. But treating the same as in force at the time this cause of action arose, which was the theory of both parties in presenting the case to this court, as well as the court below, the question arises, which provisions of the receipt in question were authorized by the controlling federal statute referred to (Carmack Amendment, as amended by the first and second Cummins Amendments). And this question is solvable by the proper construction of that clause in the second Cummins Amendment, which empowers the Commerce Commission to authorize the carriers—"*to maintain rates dependent upon the value declared in writing by the shipper, or agreed upon in writing, as the released value of the property.*" (Italics ours.)

Like cases decided by the courts before the adoption of the last Cummins Amendment are not in point because of the change in the law made by such amendment. In passing upon the statute as last amended the supreme court of West Virginia, in *Lindenburg* v. *Am. Ry. Co.* (W. Va.), 106 S. E. 884, a well reasoned case, said among other things:

"For some reason presumptively found in necessity or expediency, the statute requires the declaration or agreement as to value to be made in writing,' or rather does not authorize carriage under limited liability, nor the Commission to provide for it, except upon a written declaration or agreement as to value. In its prescription of the uniform receipt, the Commission has observed this re-

quirement, by providing spaces for the value and the signature of the shipper. It has also interpreted the statute as requiring the carrier to give the shipper an opportunity to elect what value he shall declare, whether that specified in the classification for use in the absence of a declaration of any other, or some higher valuation, imposing upon him a higher rate for transportation. In other words, the receipt contemplates a declaration of value by the shipper, or an agreement with him upon the value in every instance. This seems to be the only interpretation of which the statute is fairly susceptible. It does not authorize either the Commission or the carrier to fix values. It says property may be authorized to be carried upon 'rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property.'

"As, in this instance, the carrier did not take from the shipper a written declaration of value nor a written agreement as to value, signed by him, it failed to place itself within the requirements of the statute and the regulations of the Interstate Commerce Commission prescribed thereunder. In other words, it did not comply with the conditions precedent to its right to carry the property under a limitation of liability. It should have given him a receipt specifying a value fixed by himself, and evidenced by his signature. In doing so, it would have given him the option as to value contemplated by the law. In failing to do so, it denied him that option. Besides, it neglected to avail itself of the right conditionally conferred upon it by the statute and the regulations, by its failure to take his written declaration or agreement as to value. A writing not signed by him, although specifying value, was not a declaration or agreement in writing by him.

"Preparation and promulgation of regulations by the Interstate Commerce Commission and the posting of tariffs by the carrier, conforming to such regulations, do not alone limit the liability in any particular case. Although they may be constructive notice to the shipper, the carrier's liability stands on the basis of full actual value, unless limited

in the manner prescribed. Such limitation cannot be effected in any other way."

To the same effect is *Siebert* v. *Erie R. R. Co.*, 189 App. Div. 586, 179 N. Y. Supp. 136. And counsel do not cite us any case to the contrary. It will be observed that the West Virginia court decides that the shipper must make the declaration in writing, and in addition must sign the writing. However, we do not think it necessary to decide in this case whether the shipper must sign his name to the written declaration, although the receipt here in evidence is printed with a blank place for both the shipper and the agent of the carrier to sign.

It appears from the statute that it was the purpose of Congress to afford the shipper full value for his loss, unless he chose to take the initiative in the manner laid down by the statute—that is by declaring a released value in writing. It is left entirely optional with the shipper; the carrier has nothing to do with the matter, other than to accept the shipper's declaration of released value in writing. The purpose of the statute is to give the shipper the active conscious choosing whether he will pay the lower rate and recover less than full value in case of loss or damage. If he so chooses, he sets down in writing in the receipt the released value. On the other hand, if he is silent either from choice or ignorance he pays the higher rate, which carries with it the right to recover full compensation for his loss. We are therefore of the opinion that the stipulations in the receipt relied on by appellee conform in substance to the statute; and to whatever extent, if any, those relied on by appellant conflict with those sustaining appellee's position, are unauthorized by the statute.

It follows from these views that mere silence gave the shipper the right to recover full loss, carrying with it an obligation to pay the higher rate.

*Affirmed.*